IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs at Knoxville July 29, 2020

## STATE OF TENNESSEE v. JENNIFFER DANINE HARPER

**Appeal from the Circuit Court for Robertson County
No. 74CC4-2017-CR-369  Jill Bartee Ayers, Judge**

_____

### No. M2019-01077-CCA-R3-CD

_____

After a bench trial, the Robertson County Circuit Court convicted the Appellant, Jenniffer Danine Harper, of driving under the influence (DUI) and sentenced her to eleven months, twenty-nine days to be served as forty-eight hours in jail followed by supervised probation. On appeal, the Appellant contends that the evidence is insufficient to support the conviction. Based upon the record and the parties' briefs, we find no reversible error and affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and D. KELLY THOMAS, JR., JJ., joined.

Gregory D. Smith (on appeal), Clarksville, Tennessee, and Joseph Zanger (at trial), White House, Tennessee, for the appellant, Jenniffer Danine Harper.

Herbert H. Slatery III, Attorney General and Reporter; Ruth Anne Thompson, Senior Assistant Attorney General; John Wesley Carney, Jr., District Attorney General; and Jason Christian White, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

### I.  Factual Background

In May 2017, the Robertson County Grand Jury filed a nine-count indictment, charging the Appellant with DUI; violating the implied consent law; possession of drug paraphernalia; possession of a legend drug without a prescription; driving on a cancelled, suspended, or revoked license; driving without proof of insurance; failure to exercise due care; filing a false report; and resisting arrest. The Appellant went to trial on February 11, 2019. The appellate record does not include a transcript of the circuit court proceeding.

However, pursuant to Tennessee Rule of Appellate Procedure 24(c), the Appellant has included a statement of the evidence.[1] According to the statement, the defense announced at the outset of trial that the Appellant was waiving a jury trial, and the State dismissed all counts except the DUI charge.

The statement of the evidence provides the following facts: Deputy David Barbour of the Robertson County Sheriff's Department testified that about 3:15 a.m. on December 5, 2016, he responded to a single-car wreck on Interstate 65 in White House. When he arrived at the scene, a female was walking around the wrecked vehicle. White House police arrived, so Deputy Barbour left because the White House Police Department had jurisdiction over the wreck.

Kelley Jackson, an Advanced Emergency Medical Technician with the Robertson County Emergency Medial Service, testified that she responded to the scene, which initially was called in as a two-car wreck. When Jackson arrived, only one car and the Appellant were present. The Appellant told Jackson that she was driving home when a car rear-ended her car, causing her to run off the road. The Appellant smelled of alcohol but claimed she had not consumed alcohol. The Appellant explained to Jackson that she worked at a bar and that alcohol had spilled on her clothes. The Appellant had a head contusion but refused to be transported to a hospital. Jackson indicated on a "run sheet" that the Appellant was "not impaired in ability and may waive medical treatment." Jackson said, though, that if the Appellant had been "overly inebriated" or injured, she would have insisted on transporting the Appellant to a hospital. Jackson said that not transporting the Appellant meant only that the Appellant could understand Jackson's questions, not that the Appellant was "alcohol free."

Melissa Pearce testified that in December 2016, she was a patrol officer with the White House Police Department. About 3:00 a.m. on December 5, she responded to a wreck on Interstate 65. When she arrived, one car was on the right-hand shoulder of the road. The front bumper was missing, and "fresh" damage was on the rear of the car. Deputy Barbour was present.

Officer Pearce testified that she spoke with the Appellant and that the Appellant claimed to have been "rear-ended" by a dark or black Honda Civic, which fled the scene. Officer Pearce smelled alcohol on the Appellant's breath, and the Appellant said she had spilled alcohol on herself while working at a bar. Officer Pearce had the Appellant perform two field sobriety tests: the heel-to-toe and the one-leg stand. In Officer Pearce's opinion, the Appellant failed both tests. The Appellant did not follow directions on the heel-to-toe

---

[1] The Appellant states in her brief that a court reporter was not present at trial; therefore, a statement of the evidence was prepared from audiotapes of the trial and approved by the trial court.

test and was unsteady while performing the test. The Appellant lost her balance several times on the one-leg stand test and put her foot down completely one time. The State played a video of the field sobriety tests for the trial court.

Officer Pearce testified that based on the wreck, the Appellant's admission to being the driver, the Appellant's having an odor of alcohol on her person, and the Appellant's failing the field sobriety tests, she arrested the Appellant for DUI and had the wrecked car towed from the scene. Officer Pearce conducted "a basic car inventory" prior to having the car towed and did not see any liquor bottles in the car. The officer took the Appellant to a hospital for a blood draw, and the Appellant initially refused to submit to a blood test. However, because Officer Pearce had obtained a subpoena, the Appellant ultimately consented to a blood draw. The Appellant became "agitated and said some profanities" both at the hospital and at the jail, and the State played an audiotape for the trial court in which "a few profanities could be heard."

On cross-examination, Officer Pearce testified that she noticed fresh pine needles, sap, and bark on the Appellant's car. Therefore, she concluded the car hit a tree. She said that towing the Appellant's car was standard procedure. The car belonged to a third person, and the Appellant did not have insurance for the vehicle. The White House Police Department did not offer breathalyzers tests; blood tests were "standard procedure."

At some point, the White House Police Department "fired" Officer Pearce. The reason for her firing is not in the record. At the time of the Appellant's trial, litigation over the firing was pending. Officer Pearce said she currently was working for the Millersville Police Department. On redirect examination, Officer Pearce testified that the Appellant did not appear "inured or confused" from her head injury.

Matthew Buck, a toxicologist with the Tennessee Bureau of Investigation, testified as an expert in toxicology that he tested the Appellant's blood sample. The Appellant's blood was drawn at 5:45 a.m. on December 5, 2016, and had a blood alcohol content (BAC) of 0.162 gram percent. Agent Buck explained that a person's blood alcohol level increased for one to one and one-half hours after the person consumed alcohol. At that point, the alcohol level began decreasing at a rate of 0.01 to 0.02 gram percent per hour.

On cross-examination, Agent Buck testified that in order to have a BAC of 0.162 gram percent, a person would have to consume eight "'standard drinks'" on an empty stomach. He explained that a "standard drink" was a twelve-ounce beer, a five-ounce glass of wine, or a one-ounce shot of whiskey. On redirect examination, Agent Buck testified that if the Appellant's blood was drawn at 5:45 a.m., then she had to have consumed her last alcoholic drink at 4:15 a.m. in order for her blood to have been "in absorption mode."

Otherwise, her blood would have been "in the elimination mode." The Appellant was arrested at 3:30 a.m.

At the conclusion of Agent Buck's testimony, the State rested its case. Defense counsel made a motion for judgment of acquittal, and the trial court denied the motion.

Jerry Simpson testified that about 3:00 a.m. on December 5, 2016, he was repairing a flat tire on Interstate 65 when a large truck, possibly a Ford F-150, passed by traveling more than one hundred miles per hour. About one minute later, Simpson heard a loud noise, which he presumed to be a car crash. He later investigated the noise and saw a car in the grass beside the interstate. He called 911 and reported the wreck. The driver of the wrecked car "appeared safe."

Dorcas Simpson, Jerry Simpson's wife, testified that she was with her husband on December 5 and heard a loud noise that sounded like a car crash. She later saw the wrecked car, and the car's headlights were facing the wrong direction on the interstate.

The Appellant testified that she lived in Nashville and worked at The Corner Bar near Vanderbilt University. She worked on the night of December 4, and her shift ended about 1:45 a.m. on December 5. She had to wait to be paid and then left the bar about 2:15 a.m. The bar had a "strict rule" that employees could not consume alcohol while on duty.

The Appellant testified that she did not own the vehicle she was driving and that the car belonged to her husband's cousin. The Appellant was unaware that her driver's license had been suspended due to unpaid fines and costs in Knoxville.

The Appellant testified that at the time of the wreck, she had not consumed any alcohol. Soon after the wreck, though, she was upset, nervous, and worried, so she opened a bottle of "'Secret Santa'" bourbon that was in the back seat and "'chugged'" about ten to eleven ounces "to calm [her] nerves." She then threw the bottle into the back seat or the trunk. Liquor was still in the bottle. She said she drank from the bottle because "the impact of a car hitting her, [her] vehicle spinning, and the expectation that [her] husband would be upset about the car convinced [her] she needed to 'steady her nerves.'" She thought the car that hit her was a black Honda Civic.

The Appellant testified that she did not call the police to report the wreck. She thought that she "passed" the field sobriety tests administered by Officer Pearce and that Officer Pearce "exaggerated" the Appellant's "swaying and amount of wobble" during the tests. The Appellant requested a breathalyzer test, but Officer Pearce denied her request. The Appellant "emphasized" that she did not consume any alcohol until after the wreck.

- 4 -

On cross-examination, the Appellant testified that she did not consume any alcohol between 1:45 a.m. and 2:15 a.m. when she was "off-the-clock" but still present at The Corner Bar. She said that when she retrieved the wrecked car from the tow storage unit, the partially-consumed bottle of bourbon was still in the car. She did not present any witnesses to testify about finding the bottle in the car, and she did not bring the bottle to court.

The Appellant "reluctantly acknowledged that she either lied to, or implicitly misled" Officer Pearce and Kelley Jackson by telling them that she did not consume alcohol. The smell of alcohol was on her person because she spilled alcohol on her clothes at work. The Appellant said she did not tell Officer Pearce and Jackson about consuming bourbon after the wreck because she "did not wish to complicate the situation" and thought she would be "'going home soon.'" The State noted that even when the Appellant was arrested for DUI, she still did not tell anyone about the bourbon. The Appellant did not mention the bourbon until her preliminary hearing

The trial court found that "the only real point at issue" in the case was whether the Appellant consumed alcohol before or immediately after the wreck. The trial court found the Appellant's testimony not credible because (1) the Appellant did not call the police to report the wreck and would have left the area if the Simpsons had not called 911, (2) the Appellant had a BAC of 0.16 gram percent; (3) the videos supported Officer Pearce's testimony; (4) the Appellant was not truthful with Officer Pearce or Kelley Jackson about consuming alcohol; and (5) the Appellant did not provide the bourbon bottle, hospital records, or employment records to support her testimony. Accordingly, the trial court found the Appellant guilty of DUI and sentenced her to eleven months, twenty-nine days to be served as forty-eight hours in jail followed by supervised probation.

## II. Analysis

The Appellant claims that the evidence is insufficient to support her conviction. The State argues that we should dismiss the appeal because the Appellant's motion for new trial was untimely and that the interests of justice do not warrant waiving the timely filing requirement. The State also contends that, in any event, the evidence is sufficient to support the conviction. We agree with the State.

First, we will address the State's claim that the Appellant's motion for new trial was untimely. The trial court found the Appellant guilty on February 11, 2019, and a judgment of conviction was filed that same day. The Appellant filed a motion for new trial on March 20, 2019, claiming that the evidence was insufficient to support the conviction because Officer Pearce was not credible. The State filed a written response to the motion, arguing that it was untimely. On May 16, 2019, the trial court held a hearing on the motion for new

trial and acknowledged that the Appellant filed the motion nine days late. The trial court stated that if defense counsel would prepare an order for a delayed appeal, the trial court would sign the order.[2] The trial court then proceeded to address the motion for new trial. On May 31, 2019, the trial court filed an order denying the motion, finding the evidence "more than sufficient" to support the conviction. In the order, the trial court stated that it had waived the timely filing requirement for the motion for new trial. The Appellant filed a notice of appeal on June 19, 2019.

A motion for new trial must be made in writing or reduced to writing within thirty days of the "date the order of sentence is entered." Tenn. R. Crim. P. 33(b). This provision is mandatory, and the time for the filing cannot be extended. Tenn. R. Crim. P. 45(b); State v. Martin, 940 S.W.2d 567, 569 (Tenn. 1997). Because a trial court does not have jurisdiction to hear and determine the merits of an untimely motion for new trial, the trial court's "erroneous consideration [and] ruling on a motion for new trial not timely filed . . . does not validate the motion." Martin, 940 S.W.2d at 569 (citing State v. Dodson, 780 S.W.2d 778, 780 (Tenn. Crim. App. 1989)). "If a motion for new trial is not timely filed, all [the appellant's] issues are deemed waived except for sufficiency of evidence and sentencing." State v. Bough, 152 S.W.3d 453, 460 (Tenn. 2004) (citing Tenn. R. App. P. 3(e)). Moreover, the untimely filing of a motion for new trial does not toll the time for filing a notice of appeal. Therefore, an untimely motion for new trial often will also result in an untimely notice of appeal. State v. Davis, 748 S.W.2d 206, 207 (Tenn. Crim. App. 1987).

The Appellant's motion for new trial was filed beyond the thirty-day time limit mandated by Tennessee Rule of Criminal Procedure 33(b). As a result, her notice of appeal also was untimely. "[I]n all criminal cases the 'notice of appeal' document is not jurisdictional and the filing of such document may be waived in the interest of justice." Tenn. R. Crim. P. 4(a). The only issue raised in the Appellant's motion for new trial was sufficiency of the evidence. In the interests of justice, we have decided to waive the timely filing of the notice of appeal in this case.

The Appellant claims that the evidence is insufficient to support her conviction because the trial court erred by accrediting "the lynch-pin" testimony of a police officer who was fired by the White House Police Department. She notes that contrary to Officer Pearce's testimony, Kelley Jackson testified that she was not impaired in ability and could waive medical treatment.

When an appellant challenges the sufficiency of the convicting evidence, the general standard of review by an appellate court is "whether, after viewing the evidence in the light

---

[2] No order is in the appellate record.

most favorable to the prosecution, <u>any</u> rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." <u>Jackson v. Virginia</u>, 443 U.S. 307, 319 (1979); Tenn. R. App. P. 13(e). The State is entitled to the strongest legitimate view of the evidence and all reasonable or legitimate inferences which may be drawn therefrom. <u>State v. Cabbage</u>, 571 S.W.2d 832, 835 (Tenn. 1978). Questions concerning the credibility of witnesses and the weight and value to be afforded the evidence, as well as all factual issues raised by the evidence, are resolved by the trier of fact. <u>State v. Bland</u>, 958 S.W.2d 651, 659 (Tenn. 1997). Accordingly, in a bench trial, the trial judge, as the trier of fact, must resolve all questions concerning the credibility of witnesses and the weight and value to be given the evidence, as well as all factual issues raised by the evidence. <u>State v. Ball</u>, 973 S.W.2d 288, 292 (Tenn. Crim. App. 1998). The trial judge's verdict carries the same weight as a jury verdict. <u>State v. Hatchett</u>, 560 S.W.2d 627, 630 (Tenn. 1978).

A guilty verdict can be based upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. <u>State v. Hall</u>, 976 S.W.2d 121, 140 (Tenn. 1998). "The [trier of fact] decides the weight to be given to circumstantial evidence, and '[t]he inferences to be drawn from such evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence, are questions primarily for the [trier of fact].'" <u>State v. Rice</u>, 184 S.W.3d 646, 662 (Tenn. 2006) (quoting <u>Marable v. State</u>, 313 S.W.2d 451, 457 (Tenn. 1958)). "The standard of review 'is the same whether the conviction is based upon direct or circumstantial evidence.'" <u>State v. Dorantes</u>, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting <u>State v. Hanson</u>, 279 S.W.3d 265, 275 (Tenn. 2009)). Tennessee Code Annotated section 55-10-401(a)(1) provides that a person commits DUI when the person drives or is in physical control of a vehicle "on any of the public roads and highways of the state, or on any streets or alleys, or while on the premises of any shopping center, trailer park, or apartment house complex, or any other premises that is generally frequented by the public at large" while the person is under the influence of an intoxicant.

Turning to the instant case, the reason Officer Pearce was fired from the White House Police Department was not revealed during the bench trial and is not in the record before us. Regardless, the trial court specifically discredited the Appellant's testimony that she consumed alcohol after the wreck. Notably, the trial court found the Appellant not credible because she did not call the police to report the wreck, she had a BAC of 0.16 gram percent, the video of the Appellant's field sobriety tests supported Officer Pearce's testimony, and the Appellant was not truthful with Officer Pearce or Kelley Jackson about consuming alcohol. As this court has repeatedly stated, questions concerning the credibility of the witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact, not this court. <u>State v. Tuttle</u>, 914 S.W.2d 926, 932 (Tenn. Crim. App. 1995). The trial court, as the trier of

fact, was in the best position to assess the credibility of the witnesses.  <u>Odom</u>, 928 S.W.2d at 23.  Accordingly, the evidence is sufficient to support the conviction.

### III.  Conclusion

Based upon the record and the parties' briefs, we affirm the judgment of the trial court.

_____
NORMA MCGEE OGLE, JUDGE